

DA 11-0652

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 123N

CITY OF GREAT FALLS,

       Plaintiff and Appellee,

  v.

ROBERT JOHN TRACY,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-11-012
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jeffrey L. Sutton, Sutton Law Office, Great Falls, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          James W. Santoro, Great Falls City Attorney, Mary Matelich, Assistant
City Attorney, Great Falls, Montana

Submitted on Briefs:  May 16, 2012

Decided:  June 5, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Robert John Tracy pleaded guilty in Great Falls Municipal Court to operating a noncommercial vehicle with an alcohol concentration of 0.08 or more, in violation of § 61-8-406(1)(a), MCA. He reserved his right to appeal the Municipal Court's denial of his motion to dismiss. The Eighth Judicial District Court, Cascade County, affirmed, and Tracy now appeals to this Court. We also affirm.

¶3 The incident occurred July 15, 2010, at around 2:10 a.m. Officer Shane Daniels, a 12-year veteran of the Great Falls Police Department, received a citizen's report of a running vehicle stopped at the T-intersection of Riverview Six West and Fifth Street Northwest in Great Falls. This intersection is in a residential area. Daniels arrived on the scene within three minutes. He saw a pickup stopped wholly within the right-hand lane of travel for a full minute. The vehicle's brake lights were on. Without powering the sirens or the light bar of his patrol car, Daniels approached the passenger-side window of the vehicle. He observed Tracy slumped over the steering wheel, apparently sleeping. The pickup gear was in the drive position, and Tracy's foot was on the brake pedal.

¶4 Daniels went back to his patrol car, activated the light bar, and then returned to Tracy's vehicle. He knocked on the window to awaken Tracy. Upon making contact,

2

Daniels detected the odor of an alcoholic beverage emanating from the vehicle and observed that Tracy had bloodshot eyes, slow speech pattern, and disorientation. Daniels cited Tracy with driving under the influence.

¶5      Tracy argued in the Municipal Court that Daniels lacked particularized suspicion of wrongdoing that would justify an investigative stop. In response, the prosecution argued that Daniels had made a lawful seizure under the community caretaker doctrine. The Municipal Court held a hearing at which Daniels and Tracy testified. Thereafter, the court entered an order concluding that under the community caretaker doctrine, Daniels acted appropriately in investigating Tracy's running vehicle stopped in the traffic lane.

¶6      On appeal to the District Court, Tracy argued that the factual circumstances did not support application of the community caretaker doctrine—specifically, that there were not objective, specific, and articulable facts from which a law enforcement officer would suspect that a citizen needed help or was in peril. *See State v. Spaulding*, 2011 MT 204, ¶¶ 18, 21, 361 Mont. 445, 259 P.3d 793. The District Court disagreed. Analogizing to *State v. Lovegren*, 2002 MT 153, 310 Mont. 358, 51 P.3d 471, and *State v. Burns*, 2011 MT 167, 361 Mont. 191, 256 P.3d 944, the court concluded that the community caretaker doctrine applied.

¶7      On appeal to this Court, Tracy maintains that the District Court erred. He cites *State v. Graham*, 2007 MT 358, 340 Mont. 366, 175 P.3d 885, but that case is clearly distinguishable. There, we observed that although Deputy Juhl initially may have had reason to be concerned that Graham and his passenger were having vehicle problems, the evidence of their conduct which she witnessed as she passed their vehicle completely

obviated those concerns. It was "clear they were not parked there because they were in peril, and nothing observed by Juhl suggested otherwise. Moreover, by Juhl's own admission, she did not stop and question Graham in order to assist them, but instead to 'move them along.' " *Graham*, ¶ 30. That is not the situation here.

¶8 Tracy admits that he was stopped wholly within the right-hand lane of travel. He contends that this was because he was "required to stop his vehicle at the uncontrolled intersection to yield to traffic." He further asserts that when Officer Daniels saw him through the passenger window, Tracy was "looking down at his cellular phone to send a text message." Tracy argues that being "paus[ed] at the intersection to use his cellular phone" is insufficient to support application of the community caretaker doctrine. We conclude, however, that this argument is without merit.

¶9 Daniels came upon a vehicle that was not merely "paused" in the right-hand lane of travel. The vehicle had been stopped there for at least four minutes: the three minutes between Daniels' receipt of the citizen's report and Daniels' arrival at the scene, plus the one minute before Daniels approached the passenger-side window. Daniels did not immediately power his sirens or his light bar (which would have been indicative of an investigative stop, rather than a welfare check). When Daniels observed Tracy through the passenger window, Tracy appeared to be slumped over the steering wheel. The pickup gear was in the drive position, and Tracy's foot was on the brake pedal. While Tracy maintains that he was not passed out, but was instead sending a text message on his mobile device, it was the province of the Municipal Court to assess the demeanor and credibility of the witnesses at the hearing. *Spaulding*, ¶ 23. The Municipal Court found

4

Daniels' testimony about what he observed of Tracy's appearance to be credible. Upon seeing Tracy slumped over the steering wheel of his pickup, which was stopped wholly within the driving lane for at least four minutes, with the vehicle running, Daniels had objective, specific, and articulable facts from which a law enforcement officer would suspect that a citizen needed help. The suggestion that Daniels should have driven off, rather than investigate whether Tracy needed assistance, borders on the absurd.

¶10     We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court and this Court review the Municipal Court's factual findings for clear error and the Municipal Court's legal conclusions for correctness. *See* § 3-6-110, MCA; *Stanley v. Lemire*, 2006 MT 304, ¶¶ 25-26, 334 Mont. 489, 148 P.3d 643. Doing so, we conclude that the Municipal Court's findings are supported by substantial evidence and that the Municipal Court correctly interpreted the law.

¶11     Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE

5